UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**EcoWater Systems LLC,**   Civil No. 06-3134 (JNE / SRN)

      **Plaintiff,**

      v.   **REPORT AND RECOMMENDATION**

**Hague Quality Water International,**

      **Defendant.**

---

    Michael R. Cunningham, Gray, Plant, Mooty, Mooty & Bennett, PA, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiff.

    James M. Jorissen, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, and Edward A. Matto & John J. Okuley, Mueller, Smith & Matto, 7700 Rivers Edge Drive, Suite 200, Columbus, OH 43235, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion to Dismiss or Transfer (Doc. No. 16). This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that the motion be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff EcoWater Systems LLC ("Plaintiff" or "EcoWater") and Defendant Hague Quality Water International ("Defendant" or "Hague") are competitors in the field of residential water conditioning systems. In 2005, EcoWater alleged that one of Hague's conditioners, the WaterBoss 900, did not meet its stated specifications. Such specifications derive from testing performed by the Water Quality Association ("WQA"), an independent testing and certification organization located in Illinois, which also apparently attempts to mediate such disputes.

    In July 2006, Plaintiff then filed the present action against Defendant, generally alleging

that Hague had made false representations regarding the WaterBoss 900 which had deceived or were likely to deceive the public, thereby injuring Plaintiff. (Doc. No. 1.) Plaintiff thus stated a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for deceptive trade practices and unfair competition based largely on similar allegations. (Id.) In December 2006, this Court permitted Plaintiff to conduct limited discovery on Hague's contacts with the State of Minnesota. (Doc. No. 35.)

Defendant now moves to dismiss or transfer this action, contending that dismissal is required under Section 1406 because venue is improper under Section 1391 or, in the alternative, that transfer of this action to Ohio is warranted pursuant to Section 1404(a) or Section 1406. Defendant is an Ohio corporation that has its corporate headquarters, sole manufacturing plant, and its packaging and primary distribution facilities in that same state. Plaintiff, although organized under the corporation laws of Delaware, has its principal place of business in Minnesota.

## II.    DISCUSSION

### A.    There Is No Basis To Dismiss Under Section 1406, Which Only Applies Where Venue Has Been Laid In The Wrong District

Defendant first contends that the action should be dismissed under Section 1406 for improper venue because Hague is not subject to personal jurisdiction in Minnesota. (Mem. at 3-4.) Where a plaintiff files an action in a district where proper venue is lacking, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

Defendant argues that dismissal is required under Section 1406(a) because venue in Minnesota is not proper under Section 1391(b). (Mem. at 4.) Where, as here, subject matter "jurisdiction is not founded solely on diversity," venue is proper

> only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Because Defendant is a corporation, it is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Accordingly, venue is permissible in this district if Defendant is subject to personal jurisdiction in Minnesota or if a substantial part of the events or omissions giving rise to the claim occurred in Minnesota.

### 1. This Court Has Personal Jurisdiction Over Defendant

Because Minnesota has construed its long-arm statute to extend to the full reach of the Due Process Clause, the issue of whether this Court would have personal jurisdiction over Defendant becomes simply whether the exercise of such jurisdiction would comport with "'traditional notions of fair play and substantial justice." Juelich v. Yamazaki Mazak Optonics Corp., 682 N.W.2d 565, 570 (Minn. 2004) (internal citation omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Defendant's "'conduct and connection with the forum State [must be] such that it should reasonably anticipate being haled into court there.'" Id. (internal citation omitted).

Here, Defendant repeatedly contends–although in a rather general, conclusory fashion–that it lacks the "minimum contacts" with Minnesota needed to establish either general or specific personal jurisdiction. (Mem. at 1 (claiming Defendant "has little if any connection" with Minnesota), at 4 (contending Defendant "simply lacks the necessary minimum contacts with Minnesota").) But a review of the deposition transcripts of Hague's Rule 30(b)(6)

3

designees and of Hague's interrogatory responses indicates that Hague regularly distributed and sold its products in Minnesota through several retailers including Menards.

Hague's Vice-President and Controller, designated to testify as a Rule 30(b)(6) witness, testified (1) that Hague had agreements with dealers for specified territories in Minnesota to which Hague shipped its products (Doc. No. 40, Ex. A, at 10:4-23, 18:25–19:3), (2) that Hague was "doing business" in Minnesota (id. at 20:5-8), (3) that one of the Minnesota dealers was Menards (id. at 22:12-15, 23:25–24:3), (4) that as a result Hague had "sales of Hague products in . . . Minnesota" (id. at 27:18-24), (5) that those sales included the WaterBoss 900 (id. at 32:9-12), and (6) that Hague had "employees actually working in . . . Minnesota with customers located in . . . Minnesota" (id. at 35:13-18).

Similarly, Hague's President, also designated to testify as a Rule 30(b)(6) witness, testified (1) that Hague employed sales representatives in Minnesota that worked on a "regular" basis with the retailers selling Hague's products (Doc. No. 40, Ex. B, at 8:18–10:13, 12:25–13:18), (2) that Hague had approximately five such representatives whose territory included Minnesota handling two separate product lines (id. at 17:13–19:9), (3) that Hague also distributed its products through Mills Fleet Farm in addition to Menards (id. at 22:12-23), (4) that Hague's sales in Minnesota included the WaterBoss 900 (id. at 26:9-18), (5) that Hague also contracted with marketing companies "to do in-store servicing" at the "big box" retailers in Minnesota (id. at 30:15-22), and (6) that Hague, through its sales representatives, was "doing business in Minnesota" (id. at 34:12-19).

In addition, Defendant's responses to Plaintiff's interrogatories further reveals Defendant's extensive efforts to sell its products in Minnesota. Defendant acknowledged (1) that its annual sales of each of two particular models of water conditioning units in Minnesota

4

regularly exceeded $50,000, (2) that it estimated its "gross dollar sales in Minnesota" of all of its products to be in excess of $1,000,000 per year, (3) that "it has a number of employees and/or agents that have been present in Minnesota" on a regular basis to facilitate sales of Defendant's products, and (4) that it had shipped its products to literally dozens of independent dealers or distributors in Minnesota. (Doc. No. 40, Ex. D, at 5-11.)

Such widespread and extensive efforts to market and sell its products in Minnesota would appear to satisfy the requirement of continuous and systematic contacts with the forum so as to support a finding of general jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 & n.15 (1985) (explaining that specific jurisdiction requires that "the litigation results from alleged injuries that 'arise out of or relate to' those activities" whereas general jurisdiction permits a forum to exercise "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum"); Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 841 F. Supp. 719, 721 (M.D.N.C. 1993) (finding that defendant in Lanham Act case, despite not having an "employee, sales representative or agent" in the forum, was "'doing business' within this district in a continuous and systematic manner" based on its "mail order business which mails publications for . . . equipment" to forum and every other state). Cf. Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc., 851 F. Supp. 1265, 1269 (E.D. Wis. 1994) (noting that court had personal jurisdiction over defendants in Lanham Act case where they "were 'engaged in substantial and not isolated activities within [the forum] state,'" and that "'products . . . serviced or manufactured by the defendant[s] were used or consumer within the [forum] state in the ordinary course of trade'").

Even if such a regular pattern of sales would not establish general jurisdiction, Hague's sales in Minnesota included the WaterBoss 900, the product at issue here, and thus those

5

particular sales and marketing efforts would support specific jurisdiction. Defendant characterizes "its contacts as related to the present suit" as "attenuated." (Reply Mem. at 10 n.9.) But on this record, only one conclusion is possible–that Defendants knowingly, indeed intentionally, marketed the WaterBoss 900 (among other products) in Minnesota on a regular basis. It is therefore beyond question that Defendant purposely availed itself of doing business in Minnesota such that the exercise of jurisdiction by a Minnesota court over Defendant would not violate due process. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75 (1985) (discussing requirement that defendant "'purposefully directed' his activities at residents of the forum"). This is not a case where a manufacturer simply placed its product in a general stream of commerce without any intent to reach the market in Minnesota such that its contacts with that state could be deemed only random, fortuitous or attenuated. See id. at 475.[1]

### 2. A Substantial Part Of The Transaction Occurred Here

This Court need not rely on a finding of personal jurisdiction, however, because the alternative basis for venue under Section 1391(b) is also satisfied–that is, that a substantial part of the events or omissions giving rise to the claim occurred here in Minnesota. "The current language of 1391(b) . . . recognizes that there may be more than one district in which a substantial part of the events giving rise to the claim occurred, and that venue would be proper in each such district." Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117,

---

[1] Defendant claims that "[w]hile Hague employees may have visited Minnesota, [Plaintiff] provides no evidence whatsoever that the so-called 'false advertising' ever actually reached Minnesota." (Reply Mem. at 11.) But Defendant itself states that its water conditioning systems are "shipped in packaging bearing the certification symbols" of the WQA and that Defendant has been "listing on its packaging the capacity" of its products based on the WQA's test results. (Doc. No. 19, ¶¶ 5-6.) These representations are precisely what Plaintiff alleges constituted the false advertising. Defendant further acknowledges that its products "reached" Minnesota. (Reply Mem. at 7-8 & n.8.) In fact, the record establishes that Defendant knowingly and regularly directed its products to the Minnesota market (among others).

1125 (D. Minn. 1996), aff'd, 130 F.3d 1305 (8th Cir. 1997).

The fact that Defendant is located in Ohio does not preclude venue in Minnesota because here, as in Minnesota Mining and Mfg. Co., "Minnesota is the district both where [Plaintiff] is located and will be injured and one of several districts where confusion is alleged to have occurred." Id. Accord Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp.2d 578, 586 (E.D. Pa. 2005) (finding venue proper in district where injury would be felt); Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 182 (S.D.N.Y. 1995) (noting that "[a]lmost all cases that have addressed the language of 1391(b) have construed it to mean that venue may be proper in more than one district" and that "in trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred").[2]

Minnesota is thus at least a proper venue. Accordingly, Section 1406–which assumes that the original forum is "wrong"–simply does not apply. See Stewart Organization, Inc. v. Ricoh, 487 U.S. 22, 28 n.8 (1988); Steward v. Up North Plastics, Inc., 177 F. Supp. 2d 953, 957 (D. Minn. 2001) (noting numerous decisions "that 1406(a) is not an appropriate vehicle for enforcing a forum selection clause when venue in the original forum is otherwise statutorily proper"). Because venue in Minnesota is not "wrong," Section 1406 affords no basis to dismiss.

### B. A Transfer Is Not Warranted Here Under Section 1404 Or Section 1406

In the alternative, Defendant contends that this action should at least be transferred to the

---

[2] Defendant contends that Plaintiff's "corporate parent is located in Illinois." (Reply Mem. at 11.) But jurisdiction and venue are measured with respect to the particular party to the action, not its corporate parents or subsidiaries. A corporate parent is, of course, a separate legal entity from its subsidiaries. See United States v. Bestfoods, 524 U.S. 51, 61 (1998) (noting general principle "that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries").

7

federal court in the Southern District of Ohio under Section 1404(a). (Mem. at 6-11.)[3] Section 1404 permits transfer to a district where the action "might have" been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). But transfer under Section 1404(a) "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982) (affirming transfer based on the "unique posture" of case), abrogation on other grounds recognized by, Mo. Housing Dev. Comm'n v Brice, 919 F.2d 1306, 1311 (8th Cir. 1990). Here, having, weighed all the relevant factors, the Court finds that Defendant has not met its burden of showing that transfer under Section 1404(a) is appropriate. Cf. Nelson v. Bekins Van Lines Co., 747 F. Supp. 532, 535 (D. Minn. 1990) (noting that the "party seeking transfer bears the burden of establishing that the transfer should be granted").

### 1. Substantial Deference Is Owed To Plaintiff's Choice Of Forum

It is beyond dispute that "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir. 1997) (emphasis added). This principle is often applied in Lanham Act cases to deny transfer motions where the plaintiff has filed suit in its home forum, particularly where, as here, the plaintiff also alleges claims based on the law of the forum state. E.g. Broadcast Marketing Int'l, Ltd. v. Prosource Sales & Marketing, Inc., 345 F. Supp. 2d 1053, 1064 (D. Conn. 2004) (denying transfer motion where plaintiff resided in forum, products at

---

[3] Similarly, Defendant suggests that transfer could be ordered under Section 1406. (Mem. at 5.) Section 1406 permits transfer to a district where the action "could have" been brought "if it be in the interest of justice." 28 U.S.C. § 1406(a). But transfer under Section 1406 is not possible here because that provision only comes into play if the original district where the action was filed was not a proper venue. Id. This Court has already ruled, however, that Minnesota is a proper venue. See supra Section II.A.

issue were sold in forum and forum court was "better equipped to deal with the law governing" claims based on forum state law); see Hueblein, Inc. v. Walker, 936 F. Supp. 177, 186 (D. Del. 1996) (addressing "'home turf'" rule, which recognizes deference owed to plaintiff's choice of filing suit in district where it is principally located).

Here, Plaintiff's principal place of business is in Minnesota and thus its decision to file this action here can hardly be deemed arbitrary or an attempt to gain any unfair advantage. See Broadcast Marketing Int'l, Ltd., 345 F. Supp. 2d at 1065 ("'[I]t is legitimate and rational for a plaintiff to choose a forum in which consumers in the forum allegedly are being injured by the defendants' activities.'"); Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp.2d 578, 586-87 (E.D. Pa. 2005) (stating, in Lanham Act case, that "when a plaintiff chooses his home forum the choice is entitled to great deference"). Thus, Defendant faces a heavy burden in arguing that another venue is clearly more convenient.

### 2. Defendant Has Not Shown That Any Relevant Factors Clearly Outweigh Plaintiff's Choice Of Forum

To carry its burden, Defendant "must show that [its] inconvenience '*strongly*' outweighs the inconvenience plaintiffs would suffer if venue were" transferred. Nelson v. Bekins Van Lines Co., 747 F. Supp. 532, 535 (D. Minn. 1990) (emphasis in original) (internal citations omitted). Here, the other relevant factors do not outweigh the deference owed to Plaintiff's decision to file suit here. Although each case is decided on its own facts and circumstances, there are "three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, 119 F.3d at 691.[4]

---

[4] The Court first notes that a Lanham Act case such as this does not present a cause of action that involves any fixed situs such as real property that would weigh in favor of transfer to

9

With respect to the convenience of the parties, Defendant generally claims that its offices, facilities, documents and personnel are located in Ohio, not Minnesota. (Mem. at 7-8.) But "[t]he mere fact that many or all of a defendant's witnesses and corporate documents reside in the transferee forum does not by itself justify a transfer." Hueblein, Inc. v. Walker, 936 F. Supp. 177, 189 (D. Del. 1996) (addressing Lanham Act claims).

Defendant concedes "that some of Hague's products and some of Hague's national advertising may have reached Minnesota," but contends that "[t]here is no indication whatsoever that any of these events were somehow unique to Minnesota, or did not also occur in Ohio and other states." (Mem. at 9; accord Reply Mem. at 7 (stating that "small numbers of Hague's WaterBoss 900 models were sold in Minnesota"); id. at 9 (stating that "Hague has never averred that Hague has no contacts of any kind with Minnesota").) But even assuming this is true, it does not support a transfer.[5] Minnesota is not an inappropriate venue simply because other venues might also be permissible.

Although Defendant contends that litigating in Minnesota would be inconvenient for it, the record does not support the conclusion that Defendant's burden in litigating here would be so much greater than in Ohio, particularly when weighed against the corresponding burden imposed on Plaintiff in having to litigate in Ohio rather than here. Moreover, Defendant's rather

---

the district where such situs is located. See Harley-Davidson, Inc. v. Columbia Tristar Home Video, Inc., 851 F. Supp. 1265, 1271 (E.D. Wis. 1994) (questioning whether "the material events of a trademark infringement case revolve around *any* specific situs").

[5] Defendant argues that Plaintiff's "claims really related to the national distribution of the WaterBoss 900 product." (Reply Mem. at 9.) But even assuming this is true, it precludes neither venue nor personal jurisdiction in Minnesota and likewise does not compel or even warrant transfer to any other district. Where distribution of a product is nationwide, then the range of possibilities of jurisdictions that might have jurisdiction or venue over the manufacturer is expanded, not limited. Otherwise, a manufacturer could impermissibly defeat jurisdiction in every district on the grounds that its product was distributed in all of them.

conclusory claims of inconvenience and burden in having to litigate here ring somewhat hollow in light of the record that Defendant has intentionally and systematically pursued the market for its goods in Minnesota.[6] Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-74 (1985) ("[W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities."). If Defendant can sell its products here, it should also be able to defend any resulting lawsuits here.

Insofar as Defendants simply argue that Minnesota is an inconvenient forum for them, such an argument mistakes the appropriate transfer analysis. Litigating this action in Minnesota might be less convenient for Defendant than proceeding in Ohio. But it would appear that unless all of the parties, all of the witnesses and all of the evidence are located in a single district, litigation in any particular district is necessarily somewhat inconvenient for someone. A mere showing of some inconvenience in having to litigate in an out-of-state forum does not warrant a transfer. Transfers are not proper under Section 1404 if they merely shift the inconvenience from one party to another. Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc., 114 F. Supp. 2d 856, 862 (D. Minn. 2000).

The Court also notes that defending a suit in an out-of-state forum no longer presents the

---

[6] Although Defendant has submitted an Affidavit from Hague's Vice-President addressing certain factors relevant to the transfer analysis, the Affidavit is essentially conclusory. For example, it merely states "Hague's defenses will require attendance of witnesses from Hague located in Ohio; many of the documentary and other sources of proof are located in Ohio; and many of the events that gave rise to the dispute occurred in . . . Ohio." (Doc. No. 19, ¶ 15.) The remainder of the Affidavit likewise states in general terms that "[t]hose individuals with information and knowledge" of various topics as well as "[a]ll documents and records and knowledgeable individuals regarding [Defendant's] profits" are located in Ohio. (Id. at ¶¶ 16-19.) But this fails to identify exactly which witnesses would be called and precisely why having to travel to Minnesota would impose an unjust burden.

inconvenience it once did, and such inconveniences, at least where the defendant is a corporation defending a lawsuit based on its corporate business, are simply a normal cost of doing business. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) ("[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engaged in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity."). As other courts have observed,

> technological advances have made it more difficult for defendants to establish that litigating in [a foreign state] is inconvenient for the parties and the witnesses. This is especially true when the defendants are substantial companies doing business in the national market place. Thus, defendants must establish that litigating [in the plaintiff's chosen forum] will pose a "unique or unusual burden" on their business operations.

Hueblein, Inc. v. Walker, 936 F. Supp. 177, 188-89 (D. Del. 1996) (addressing Lanham Act claims).

The convenience of witnesses is clearly relevant, but there is no showing here that the aggregate balance of witness convenience tips decidedly in favor of some other forum. Cf. Terra Int'l, 119 F.3d at 696-97 (noting convenience factors but stating that "we cannot say that they so overwhelmingly favor Iowa as to outweigh the significance of the agreed-upon forum selection clause"). Insofar as the claims concern the testing and evaluation of Defendant's products as performed by the Water Quality Association (WQA), it appears that some witnesses and documentary evidence are located in Illinois. Indeed, Defendant concedes that relevant events, to the extent that they did not occur in Ohio, occurred "in Illinois where WQA is located." (Mem. at 9.) But transferring this action to Ohio would not lessen the inconvenience with respect to any witnesses or documentary evidence located in Illinois.

The interests of justice likewise do not compel transfer here as there is no showing that

the federal courts in Minnesota face any problematic choice of law issues or are overwhelmed compared to those of Ohio. Terra Int'l, 119 F.3d at 696 (noting several "interest of justice" factors).

Thus, transfer under Section 1404 is not appropriate as the proposed transferee forum is not clearly more convenient when considering the aggregate interests of all parties and non-party witnesses, and the interests of justice. On balance, the Court finds no reason to disturb Plaintiff's choice of forum.

### III. CONCLUSION

This Court has personal jurisdiction over Defendant and a substantial part of the events or omissions giving rise to the claim occurred here. Thus Section 1406 does not apply because Minnesota is at least a proper forum. Defendant has not met its difficult burden under Section 1404 of establishing a clearly more convenient forum.

### IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss or transfer this action (Doc. No. 16) be DENIED.

Dated: May 22, 2007

    Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by June 6, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.